**IT IS ORDERED as set forth below:**

Date: September 25, 2024



_____
Lisa Ritchey Craig
U.S. Bankruptcy Court Judge

_____

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CASE NUMBERS: |
| | : | |
| **EDGEWOOD FOOD MART,** | : | **23-61204-LRC** |
|     Debtor. | : | |
| _____ | : | |
| **LAMAR LESTER,** | : | ADVERSARY PROCEEDING |
|     Plaintiff, | : | NO. 24-05009-LRC |
| | : | |
| v. | : | |
| | : | |
| **EDGEWOOD FOOD MART, INC.,** | : | IN PROCEEDINGS UNDER |
| **AMIN PANJWANI,** | : | SUBCHAPTER V OF |
| **400 EDGEWOOD, LLC, AND** | : | CHAPTER 11 OF THE |
| **TRUIST BANK,** | : | BANKRUPTCY CODE |
|     Defendants. | : | |
| _____ | : | |

## ORDER

Before the Court is the *Motion for Sanctions Pursuant to Fed. R. Bankr. P. 9011* filed by Edgewood Food Mart, Inc. ("Defendant"). Doc. 5, (the "Rule 9011 Motion").

1

Defendant seeks sanctions against Lamar Lester ("Plaintiff") and his counsel for having filed a complaint to determine that Defendant is co-owner of the realty it leases, to avoid as preferences payments made by Defendant to 400 Edgewood, LLC ("400 Edgewood"), and for attorney's fees (the "Complaint"). Plaintiff has failed to file a response, and, therefore, the Rule 9011 Motion is deemed unopposed. *See* BLR 7007-1(c).[1]

Defendant provided Plaintiff's counsel notice of the Rule 9011 Motion on February 16, 2024, and filed it with the Court on May 8, 2024. As Plaintiff voluntarily dismissed the Complaint *after* the safe harbor window had ended, the Court will address the issue of sanctions notwithstanding the dismissal of the Complaint.

I.     **Factual Background**

Defendant operates a gas station and food mart on property located at 400 Edgewood Avenue, S.E., Atlanta, Georgia (the "Premises"), which it leases from 400 Edgewood. Both Defendant and 400 Edgewood are owned by Amin Panjwani, the principal of Defendant. Defendant operated without issue until a shooting occurred on or near the Premises. Plaintiff was injured in the shooting and sued Defendant, Mr. Panjwani, 400 Edgewood, and others in state court. He obtained a $2,375,000 judgment against Defendant and is the largest creditor in Defendant's bankruptcy case. When Plaintiff garnished Defendant's bank account, Defendant filed a voluntary petition under

---

[1] This matter is a core proceeding, over which this Court has subject matter jurisdiction. 28 U.S.C. § 1334; § 157(b)(2)(A); *In re Virani*, 2017 WL 5564092, at *1 (Bankr. N.D. Ga. Nov. 16, 2017), *aff'd sub nom. Modi v. Goodman*, 2019 WL 13413375 (N.D. Ga. Mar. 7, 2019).

2

Subchapter V of Chapter 11 of the Bankruptcy Code. Case No. 23-61204 (the "Bankruptcy Case").[2]

*Preference Motions*

In the Bankruptcy Case, Plaintiff filed two motions seeking to recover alleged preferential payments (Bankruptcy Case, Docs. 18, 46, the "Preference Motions"), which Defendant opposed (*Id.*, Doc. 66). On December 22, 2023, the Court denied the Preference Motions without prejudice, finding that Plaintiff, "as a creditor, absent a grant of derivative standing, lacks the statutory authority to seek avoidance and recovery of preferential transfers pursuant to § 547 of the Bankruptcy Code." *Id.*, Doc. 69.

*2004 Examination Motions*

Previously, on November 30, 2023, Plaintiff had filed twelve motions for 2004 Examinations of Defendant, insiders of Defendant, and certain non-debtor, non-insider parties (Bankruptcy Case, Docs. 31–42, the "2004 Exam Motions"), which he later amended and refiled due to filing deficiencies (*Id.*, Docs. 47–59). Defendant objected to the 2004 Exam Motions (*Id.* Doc. 65; Doc. 95, the "Supplemental Objection"). In Defendant's original objection, it opposed the motions because they were "overly broad; ambiguous; overly burdensome; without a stated scope, purpose or time limit; without specific document requests; and in many cases improperly served." In the Supplemental

---

[2] The Court takes "judicial notice of the dockets and the content of the documents filed in the case for the purpose of ascertaining the timing and status of events in the case and facts not reasonably in dispute." *In re Ferguson*, 376 B.R. 109, 113 n.4 (Bankr. E.D. Pa. 2007), as amended (Oct. 25, 2007) (citing Fed. R. Evid. 201); *In re Hart*, 2013 WL 693013, at *1 n.2 (Bankr. D. Idaho Feb. 26, 2013) ("Pursuant to Fed. R. Evid. 201, the Court takes judicial notice of its own dockets."); *Thomas v. Alcon Labs.*, 116 F. Supp.3d 1361 (N.D. Ga. 2013) (citing *Serpentfoot v. Rome City Comm'n*, 322 F. App'x 801, 807 (11th Cir. 2009)).

3

Objection, Defendant added that, since Plaintiff had commenced an adversary proceeding—the instant case—the 2004 Exam Motions were barred by the "pending proceeding" rule, which required Plaintiff to conduct discovery in accordance with Part VII of the Federal Rules of Bankruptcy Procedure, rather than relying on Rule 2004.

In response, Plaintiff acknowledged that Rule 2004 examinations should not be used to abuse or harass another party, to elicit information unrelated to debtor's financial affairs or the administration of the debtor's estate, or to examine an entity with no knowledge of the debtor's affairs but maintained that none of these exceptions applied to his requests. Bankruptcy Case, Doc. 107. He also conceded the existence of the pending proceeding rule but argued, without authority, that he had not commenced an adversary proceeding by filing the Complaint because he had not served the summons. Plaintiff further stated that he did not "intend to serve Summonses and the Complaint until the 2004 discovery is completed." The Court denied the 2004 Examination Motions, having rejected Plaintiff's argument that service of the summons is required before an adversary proceeding is pending, and sustained Defendant's objections based on the pending proceeding rule and a finding that Defendant would be unduly burdened by the requests, given the lack of a limitation on the scope of information requested. *Id.*, Doc. 124.

*Plaintiff's Motion to Dismiss the Bankruptcy Petition and the Commencement of the Adversary Proceeding*

On January 10, 2024, Plaintiff filed his *Motion to Dismiss the Petition or Convert to Chapter 7* (Bankruptcy Case, Doc. 77, the "Motion to Dismiss Petition"). In the Motion to Dismiss Petition, Plaintiff argued that the case should be dismissed for cause, pursuant

4

to § 1112(b)(4)(A), (B) and (F), due to Defendant's gross mismanagement of the estate, and because Defendant filed the bankruptcy petition in bad faith.  Plaintiff specifically suggested that Defendant had created a fake security agreement, that Defendant was an owner of the Premises rather than a tenant, and that Defendant was not complying with its obligations to file accurate and complete financial reports.  Plaintiff insisted on his right to have the Motion to Dismiss Petition heard and resolved within fifteen days of the filing of the motion, as provided in § 1112(b), which required the Court to hold an evidentiary hearing on shortened notice without additional time for discovery.  At the hearing on January 29, 2024, the Court found that Plaintiff failed to present sufficient evidence to support his contention of gross mismanagement, nor the claim that the relationship between Debtor and 400 Edgewood was not a true landlord/tenant relationship.  The Court also agreed with Defendant and the United States Trustee that Defendant had complied with its financial reporting obligations.  Concluding that Plaintiff had failed to meet his burden to demonstrate that the Bankruptcy Case was filed in bad faith, or any other cause for dismissal within the meaning of § 1112(b), the Court denied the Motion to Dismiss Petition.

      Plaintiff filed the Complaint on January 24, 2024, but did not serve it or a summons on Defendant, or any other named defendant, and never sought leave to amend the Complaint.  Defendant provided Plaintiff's counsel with a copy of the Rule 9011 Motion by regular mail and email on February 16, 2024.  After the 21-day safe harbor window provided by Rule 9011 had passed without any action by Plaintiff, Defendant moved to dismiss the Complaint (Doc. 3, "Motion to Dismiss Complaint") on May 7, 2024, at 4:45

5

p.m. On May 7, 2024, at 9:10 p.m., Plaintiff responded in opposition to the Motion to Dismiss Complaint (Doc. 4), stating that his counsel sent an email on May 7, 2024, requesting that Defendant's attorney acknowledge service of the summons and Complaint, but, instead of cooperating, Defendant filed the Motion to Dismiss Complaint. The email Plaintiff's counsel attached, however, appears to have been sent at 7:49 p.m. on May 7, 2024—three hours after Defendant filed the Motion to Dismiss Complaint.

On May 8, 2024, Plaintiff requested issuance of an alias summons in the Adversary Proceeding. The same day, having cleared the safe-harbor window, Defendant filed the Rule 9011 Motion. On May 29, 2024, Plaintiff voluntarily dismissed the Complaint without prejudice. Doc. 7.

## II.     Rule 9011 Sanctions Standard

When a party presents a writing to the court, that person is "certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" four separate assertions: "(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief." Fed. R.

6

Bankr. P. 9011(b).  Upon notice and reasonable opportunity to respond, the Court may determine if any of the factors above have been violated, and if so, the Court may impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b).  Fed. R. Bankr. P. 9011(c).  But, "[m]onetary sanctions may not be awarded against a represented party for a violation of subdivision (b)(2)." Fed. R. Bankr. P. 9011(c)(2)(A).  Rule 9011 also contains what is known as a "safe harbor" provision, which allows the party against whom sanctions are being sought the opportunity to withdraw or properly amend the challenged writing.  Fed. R. Bankr. P. 9011(c)(1)(A).  This safe harbor provision mandates that a party seeking to file a motion for sanction allow the offending party 21 days after service of the motion to rectify the writing in question; prior to that 21-day deadline, the moving party may not file or present the motion to the Court.

Rule 9011 provides essentially two separate grounds for sanctions: (1) where a pleading is "'frivolous, legally unreasonable, or without factual foundation'" or (2) where a pleading is "'filed in bad faith or for an improper purpose.'"  *Matter of Nicholson*, 579 B.R. 640, 649 (Bankr. S.D. Ga. 2017) (quoting *Glatter v. Mroz (In re Mroz)*, 65 F.3d 1567, 1572 (11th Cir. 1995)).[3]  The burden of proof is on the party seeking sanctions.  *See In re Marietta City Gramling St. Land Tr.*, 2014 WL 6460684, at *5 (Bankr. N.D. Ga. Oct. 21, 2014) (citing *In re Weaver*, 307 B.R. 834 (Bankr. S.D. Miss. 2002)).  "Once a prima facie case has been made, the burden shifts to the party from whom the sanction is sought to

---

[3] Rule 9011 is modeled after and substantially identical to Federal Rule of Civil Procedure 11, and courts frequently look to cases interpreting Rule 11 when applying Rule 9011.  *Nicholson*, 579 B.R. at 649 (citing *Mroz*, 65 F.3d at 1572).

7

show a legitimate purpose for the filing." *Id*. (citing *In re King*, 83 B.R. 843, 847 (Bankr. M.D. Ga. 1998)).

"To determine whether a pleading is factually or legally frivolous, a court 'must first determine whether the party's claim is objectively frivolous' and, second, 'whether the person signing the document should have been aware that it was frivolous.'" *Nicholson*, 579 B.R. at 649 (quoting *Mroz*, 65 F.3d at 1573). The Court must "ask whether a reasonable inquiry would have made the signer aware that the claim was frivolous." *Id.* "A pleading is factually frivolous where the party 'has absolutely no evidence' to support its position." *Id.* "A pleading is legally frivolous where it is 'clear under existing precedents that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands.'"[4] *Id*. (quoting *Mareno v. Rowe*, 910 F.2d 1043, 1047 (2d. Cir. 1990)). Such is the case where a party asserts a claim that is barred due to a prior order. *See In re Flashcom, Inc.,* 503 B.R. 99, 133 (C.D. Cal. 2013), *aff'd*, 647 F. App'x 689 (9th Cir. 2016) (imposing Rule 9011 sanctions where the movant "knew or should have known that the motion . . . was barred by the law of the case and therefore frivolous"); *In re Lane*, 2018 WL 4210234, at *3–4 (Bankr. W.D. Ky. Sept. 4, 2018), *aff'd,* 604 B.R. 23 (B.A.P. 6th Cir. 2019) (imposing sanctions for filing a second adversary proceeding on issues that had already been fully litigated, appealed or otherwise waived, as that

---

[4] When a pleading is filed by an attorney, this inquiry "focuses on whether a competent attorney admitted to practice before the involved court could believe in like circumstances that his actions were legally and factually justified." *In re Patmont Motor Werks, Inc*., 2018 WL 4844777, at *8 (B.A.P. 9th Cir. Oct. 4, 2018); *see also In re Spickelmier*, 469 B.R. 903, 911 (Bankr. D. Nev. 2012) ("The court assesses a potential violation of Rule 9011(b)(2) against the reasonably competent attorney standard."). Accordingly, the Court need not consider the fact that Plaintiff's counsel does not regularly practice bankruptcy law.

8

"amount[ed] to frivolous and/or vexatious litigation tactics that had only an improper purpose and amount to an abuse of the bankruptcy process"); *Tipp v. JPMC Specialty Mortg., LLC*, 2022 WL 423401, at *9 (S.D. Ala. Jan. 3, 2022), *aff'd sub nom.* 2023 WL 8369968 (11th Cir. Dec. 4, 2023) (stating "repackaging [and repeating] grievances addressed in prior cases is not legally tenable," and finding a sufficient basis to impose Rule 9011 sanctions); *Grappell v. Carvalho*, 2021 WL 5178750, at *9 (S.D. Fla. Nov. 8, 2021) (imposing sanctions because, had plaintiff "conducted a reasonable inquiry into her claims, she would have known they were frivolous," where, "despite clear warning by the [defendants] that she [was] relitigating claims that have already been decided against her and affirmed on appeal, Plaintiff elected to proceed"); *see also Thomas v. Evans*, 880 F.2d 1235 (11th Cir. 1989); *Patterson v. Aiken*, 841 F.2d 386 (11th Cir. 1988); *Edwards v. Best Buy Co.*, 2021 WL 4399562, at *6 (D.D.C. Sept. 27, 2021), *aff'd*, 2022 WL 566484 (D.C. Cir. Feb. 22, 2022) (stating that the plaintiff "should have realized that bringing the same claims yet again, . . . is improper and amounts to harassment").

The "improper purpose clause," is "directed at abusive litigation practices and encompasses papers filed to cause unnecessary delay, to increase litigation costs, or filed to harass." *In re Ryan*, 411 B.R. 609, 615 (Bankr. N.D. Ill. 2009). The focus is on *why* the nonmovant filed the pleading at issue. *Am. Telecom Corp. v. Siemens Info. & Commc'ns Network, Inc.*, 2005 WL 5705113, at *4 (N.D. Ill. Sept. 7, 2005). To "determine whether a paper was interposed for any improper purpose, a court must look to 'objectively ascertainable circumstances that support an inference' that the non-movant's purpose for filing a paper was improper . . . ." *Id.* (noting that a "'paper interposed for any improper

9

purpose is sanctionable whether or not it is supported by the facts and the law, and no matter how careful the pre-filing investigation'"); *see also In re Whitlow*, 2001 WL 34048136, at *3 (Bankr. E.D. Va. Nov. 20, 2001) ("A signatory's purpose is derived from the objective evidence surrounding the litigation."); *In re Am. Telecom Corp.*, 319 B.R. 857, 872 (Bankr. N.D. Ill. 2004) ("Rule 9011(b) prohibits the filing of a pleading for an improper motive or reason such as delay, harassment, or causing expense, even if the filing relates to a claim that is otherwise colorable or supported by some evidence and legal authority."). To determine if a pleading was filed in bad faith or for an improper purpose, "the court must inquire whether the pleading was filed to vindicate the party's rights or for some other purpose." *Nicholson*, 579 B.R. at 650 (citing *In re Kunstler*, 914 F.2d 505, 518 (4th Cir. 1990)). "Because direct evidence of a party's subjective purpose is rarely available, this is an objective inquiry." *Id.* (citing *In re Graffy*, 233 B.R. 894, 896 (Bankr. M.D. Fla. 1999)).

Further, if a violation is found, the nature of the sanction is within the Court's discretion. Rule 9011 itself states that any sanction "shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Fed. R. Bankr. P. 9011(c)(2). Courts rely on sanctions that may include nonmonetary relief, such as dismissal of the claim, as well as monetary sanctions such as "'an order to pay a penalty into court" or "an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.'" *Campbell v. High Tech Rail & Fence, LLC*, 2020 WL 13526696, at *11 (N.D. Ga. Nov. 17, 2020); *In re Muscatell*, 116 B.R. 295, 299 (Bankr. M.D. Fla. 1990) (listing

10

nonmonetary and monetary sanctions, including a private or public reprimand; a fine; an award of reasonable expenses including reasonable attorney's fees, incurred as a result of the misconduct; an order precluding the litigation of certain issues; and dismissal of the action or entry of a default judgment). To choose the appropriate sanction, the Court may consider a variety of factors, including the procedural posture of the case, the amount needed to deter similar activity by other litigants, the nature of the litigation, and the ability of the sanctioned party to pay. "In choosing a sanction, 'the least severe sanction [that is] adequate to serve the purpose should be imposed.'" *In re Modi*, 2023 WL 3561394, at *3 (Bankr. N.D. Ga. May 22, 2023), reconsideration denied, 2023 WL 3909470 (Bankr. N.D. Ga. June 8, 2023); *see also In re Miles*, 2012 WL 5336125, at *2 (Bankr. N.D. Ga. Sept. 20, 2012) ("The rule was not intended to award prevailing parties compensation for costs; it was intended to deter litigation abuse.").

### III. Discussion.

In the Complaint, Plaintiff asserted three claims for relief. First, Plaintiff sought a determination that Debtor owns an interest in the Premises, relying on various equitable theories. The facts relied upon included: (1) Defendant occupied the Premises pursuant to a written lease; (2) part of Defendant's Chapter 11 plan was to negotiate an extension of the lease to allow it to operate its business for the term of a three-year plan and repay some portion of the debt it owes to Plaintiff, and Mr. Panjwani had the power to extend the lease because he owned both Defendant and 400 Edgewood; (3) Defendant is a co-borrower on the promissory note owed by 400 Edgewood and secured by the Premises (the "Note"); (4) Defendant incurred the obligation on the Note without receiving any benefit; (5) payments

11

on the Note were derived from Defendant's business operations; and (6) by making Defendant a co-borrower on the Note, Mr. Panjwani ignored the corporate form of Defendant and 400 Edgewood. Through what might be framed as theories of alter ego, veil piercing, or substantive consolidation, the Complaint essentially seeks a finding that Defendant's bankruptcy estate includes the Premises. Like the claim for avoidance of preferential transfers, such a claim belongs to the bankruptcy estate and, absent a grant of derivative standing, could not be asserted by a single creditor such as Plaintiff.[5] *See In re Cyberco Holdings, Inc.*, 431 B.R. 404, 432 (Bankr. W.D. Mich. 2010) (holding that a single creditor lacked standing to seek substantive consolidation of two bankruptcy estates because such a claim, if allowed, arose under § 542 and only the trustee had standing to pursue it); *In re Drs. Hosp. of Hyde Park, Inc.*, 308 B.R. 311, 319 (Bankr. N.D. Ill. 2004) (holding that, because the "debtor-in-possession functions as the trustee for purposes of § 544, 11 U.S.C. § 1107(a), . . .it alone has standing to sue the shareholders" of the debtor as alter egos).

Second, Plaintiff, without seeking a grant of derivative standing, again sought avoidance and recovery of preference payments made to insiders. This is the same claim the Court dismissed when it dismissed the Preference Motions, finding that Plaintiff lacked statutory authority to file a claim under § 547. Third, Plaintiff requested an award of

---

[5] To the extent Plaintiff asserts that Defendant's incurring of its obligation under the Note without consideration is an avoidable constructively fraudulent transfer, the remedy would be the elimination of the obligation, not a finding that Defendant owns the Premises. *See* 11 U.S.C. § 548 (a)(1)(B) ("The trustee may avoid . . . any obligation . . . incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily . . . received less than a reasonably equivalent value in exchange for such . . . obligation; and . . . was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such . . . obligation. . . ."). And even if the remedy were a finding that the Premises is property of Defendant's bankruptcy estate, Plaintiff lacked statutory authority to file a claim under § 548.

attorney's fees on the basis that Debtor has acted in bad faith, been stubbornly litigious, and caused unnecessary trouble and expense. While the Complaint stated no legal authority for the request, it apparently relied on O.C.G.A. § 13–6–11, which provides that "the expenses of litigation generally shall not be allowed as a part of damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the [finder of fact] may allow them."

Debtor argues that the Complaint violates Rule 9011(b)(1) and (2) and, therefore, asks the Court to evaluate the Complaint for both frivolousness and improper purpose. It is clear to the Court that Plaintiff violated Rule 9011(b)(2) and (b)(1) when he filed the Complaint. First, a reasonable attorney would not have refiled the preference claim without first seeking the Court's permission to bring the claim on behalf of the bankruptcy estate. *See In re Spickelmier*, 469 B.R. 903, 912 (Bankr. D. Nev. 2012) ("The reasonably competent attorney would not have simply changed the date on a previously denied motion and re-submitted it to the court without more than a belief that somehow the very circumstances that were insufficient to justify the relief requested in the first motion were somehow, in the second motion, sufficient . . . ."). For the reasons stated in the order dismissing the Preference Motions, Plaintiff lacked statutory authority to bring the preference claims. Whatever its merits may have been if brought by Defendant or a bankruptcy trustee, the preference claim, as filed by Plaintiff, was legally deficient and,

13

therefore, had absolutely no possibility of being successfully prosecuted by Plaintiff.[6] The Court has no difficulty finding that Plaintiff's counsel knew that simply refiling the preference claim in the form of a complaint could not cure the deficiency identified by the Court in the order dismissing the Preference Motions. Even if he was legitimately unaware of the legal defect when he filed the Complaint, any question about that would have been answered when Defendant provided him with notice of the Rule 9011 Motion. Yet he failed to dismiss the claim and, in fact, opposed Defendant's motion to dismiss the Complaint. This conduct further supports the conclusion that Plaintiff knowingly filed the Complaint in violation of Rule 9011(b)(2).

Second, the claim seeking a determination that Defendant owned an interest in the Premises suffered from the same legal infirmity as the preference claim, and a minimal amount of research would have confirmed this. The Court finds that Defendant has established a *prima facie* case that Plaintiff's counsel knew or should have known that Plaintiff could not pursue such a claim, and Plaintiff has failed to present evidence or argument to rebut this conclusion.[7] *See In re Gen. Plastics Corp.*, 184 B.R. 996, 1005 (Bankr. S.D. Fla. 1995) ("[W]here a pleading proves at trial to have been without

---

[6] It appears that this claim may never have been supported by the facts. It was revealed during a hearing on Plaintiff's subsequently filed *Motion to Compel Debtor in Possession to Take Requisite Action to Avoid Preference* (Bankruptcy Case, Doc. 154), that Debtor repaid the funds that Plaintiff believed were preferential prior to the filing of the Petition. *See* Statement by Plaintiff's Counsel, Transcript of Day 3 of Hearing held on Aug. 14, 2024 (Doc. 193), at 95 ("I'm officially withdrawing that motion because the evidence shows that he reimbursed it.").

[7] Even if the Court were to find that Plaintiff's counsel was not aware that Plaintiff lacked standing to bring the declaratory relief request, the Eleventh Circuit Court of Appeals has held that sanctions regarding a "single count of a multiple count complaint" can be imposed "where the effect and cost of that count could be separated from that of the other counts" because "Rule 11 does not prevent the imposition of sanctions where it is shown that the Rule was violated as to a portion of a pleading, even though it was not violated as to other portions." *Patterson v. Aiken*, 841 F.2d 386, 387 (11th Cir. 1988). For this reason, the Court need not determine that Plantff's request for attorney's fees under O.C.G.A. § 6-11-13 was frivolous.

14

substantive basis and a reasonably competent attorney should have known that or found it out, sanctions are appropriate when the record contains no evidence of a proper inquiry or legitimate excuse for failure to conduct a reasonable inquiry.") (citing *Mike Ousley Prods, Inc. v. WJBF–TV*, 952 F.2d 380, 383 (11th Cir.1992)).  Further, the Court agrees with Defendant that, to the extent that Plaintiff's claim that Defendant owned the Premises is based on the mere fact that Defendant was liable on the Note, the Complaint cited no legal authority that borrowing money secured by another person's property automatically makes one the owner of that property, and the Court has located none.  The Court cannot find that the reasonable competent attorney would have filed a claim based on such logic.

As to whether Plaintiff filed the Complaint in bad faith for an improper purpose, the Court found above that Plaintiff knew he lacked standing to assert the preference claims when he filed the Complaint and when he refused to dismiss it.  Plaintiff has failed to respond to the Rule 9011 Motion or to Defendant's contention that he filed the Complaint to harass Defendant and to increase the costs of these proceedings with no legitimate purpose.  Given Plaintiff's prior conduct in the Bankruptcy Case and in the instant case, and no argument to the contrary by Plaintiff, the Court agrees.

Throughout these proceedings, Plaintiff's litigation strategy appears to have been designed to increase the burden on Defendant's counsel and, consequently, the costs, and to interfere with Defendant's attempt to propose a confirmable Chapter 11 plan.  For example, Plaintiff made excessive and overbroad discovery requests when he filed his twelve motions for Rule 2004 examinations in the Bankruptcy Case.  He sought dismissal of the Bankruptcy Case and insisted on having his motion heard on shortened notice yet

15

failed to present sufficient evidence that Defendant filed the Bankruptcy Case in bad faith or failed to comply with its reporting requirements. He filed the Preference Motions without conducting sufficient research to determine that he lacked statutory authority to pursue the claim and that such a claim required the filing of an adversary proceeding. Then he filed the Complaint but failed to serve it and, when put on notice by Defendant's counsel's filing of a motion to dismiss for lack of service of process, rather than correct the deficiency, he apparently decided to rely on his lack of proper prosecution to argue that he remained entitled to rely on Rule 2004 to conduct his discovery. He also claimed in his response to Defendant's motion to dismiss the Complaint that he asked Defendant's counsel to cooperate by waiving service of process, but Plaintiff's own evidence attached to the response contradicts his contention by showing that Plaintiff's counsel made that request hours after Defendant filed the motion to dismiss.

In short, the undisputed facts, as shown by the dockets of these proceedings, show that Plaintiff knew the Complaint was frivolous and, in filing it and continuing to prosecute it, he acted deliberately to increase Defendant's costs and interfere with its legitimate attempt to reorganize. As the Court can discern no legitimate purpose in filing it, and Plaintiff has failed to point to one, the Court finds that Plaintiff filed the Complaint for an improper purpose, rather than to vindicate his rights, in violation of Rule 9011(b)(1).

As to the appropriate sanction to impose, Defendant seeks damages and payment of its attorney's fees in dealing with the Complaint. As noted above, however, the purpose of Rule 9011 is not to compensate Defendant for its damages. That being said, "[g]enerally, Rule [9011] allows a court to award the prevailing party 'reasonable expenses, including

16

attorney's fees, incurred for the motion.'" *High Heart Media, Ltd. v. Brainjuice Media, LLC*, 2021 WL 9349174, at *16 (N.D. Ga. Mar. 11, 2021) (citing *Patterson v. Aiken*, 111 F.R.D. 354, 356 (N.D. Ga. 1986) ("In ordinary cases where there has been a violation of Rule 11, the most appropriate sanction to effectuate the deterrence goal is a one-for-one cost-shift of reasonable fees incurred as a result of the violation of Rule 11.")). Given the fact that Plaintiff has already dismissed the Complaint, nonmonetary sanctions, such as striking or dismissing the offending pleading, are not available. Plaintiff has not challenged the type of sanction or provided any argument as to why a grant of attorney's fees would be more than necessary to deter him repeating the inappropriate conduct in the future. Therefore, while there is no basis to award Defendant its "damages," the Court concludes that the appropriate sanction is an award of Defendant's reasonable attorney's fees incurred in responding to the Complaint.

### IV.     Conclusion

For the reasons stated above, the Court finds that Plaintiff violated Rule 9011(b)(1) and (2) and,

IT IS ORDERED that the Rule 9011 Motion is GRANTED;

IT IS FURTHER ORDERED that Defendant is DIRECTED to file, within fourteen (14) days from the date of this Order, affidavits and a memorandum of law to support an explanation of the attorney's fees as specified herein. Plaintiff and Plaintiff's counsel may have fourteen (14) days from the date of Defendant's submission to object to the reasonableness of the fees requested, and, if Plaintiff or Plaintiff's counsel objects, Defendant shall have fourteen (14) days to file a reply. Upon consideration of all timely

17

submissions, the Court will determine the appropriate amount of sanctions to be imposed on Plaintiff and Plaintiff's counsel.

**END OF DOCUMENT**

**Distribution List:**

Herald J.A. Alexander
6442 Woodstone Way
Morrow, GA 30260

Allen Rosenfeld
P.O. Box 1547
Decatur, GA 30031